## In re EXTENSION OF NORTH THIRD AVE.

*(Supreme Court, Special Term, New York County.  October 27, 1888.)*

DEDICATION—EFFECT—BUILDING ON UNOPENED STREET—DAMAGES.

A deed conveyed land together with the right of way, in common with other abutting owners, over several unopened streets and avenues, as laid down on a map previously filed by the grantor. The grantee opened one of the streets projected on the map, but made it 16 feet narrower than the plat, and it was thus used by the abutting owners and the public. The grantee paid the taxes on the 16-foot strip and erected a building thereon. Afterwards that part of the county was annexed to the city of New York, which accepted the street. *Held,* that on the taking of the strip by the city for an extension of the street the grantee is entitled only to nominal damages.

Motion to confirm report of commissioners appointed to appraise property to be taken for the extension of North Third avenue, New York city. John B. Haskin, Bridget Curry, and the trustees of St. John's College objected to the confirmation on the ground that proper awards had not been made for their property.

*H. R. Beekman,* for the motion.  *John O'Byrne,* for Bridget Curry.  *A. B. Tappen,* for John B. Haskin.  *Granville P. Hawes, (James P. Campbell,* of counsel,) for trustees of St. John's College.

PATTERSON, J. On this motion to confirm the report of the commissioners for opening North Third avenue, objections have been insisted upon by three owners of property affected by the action of the commissioners:

*First.* Mrs. Curry, the owner of parcels Nos. 41, 42, and 43, claims that the amount of the awards made to her are inadequate, and that the property is much more valuable than the commissioners have determined it to be. I do not see from the evidence that any injustice has been done Mrs. Curry, or that the commissioners have, in any way, discriminated against her. Other property adjacent to hers has been valued at the same rate, and in the same way, and I do not think a sufficient reason has been assigned for disturbing the report in this respect.

*Second.* John B. Haskin objects to the confirmation of the report on the ground that he has been allowed, as to parcel 91, a nominal reward only. The material facts relative to his objection are as follows: Haskin acquired his title to the property in question in October, 1850, through a deed from Powell, administrator, etc. The premises conveyed were part of the William Powell, or Union Hill, farm. In October, 1849, a map of this farm was filed in the office of the clerk of Westchester county, and upon that map appeared distinctly the lines of what was to be the proposed College avenue. These lines were somewhat altered by a subsequent map made in 1850 and filed in 1851. Mr. Haskin's deed referred directly to the map, and there were conveyed to him 2.27 acres by specific description upon said map, "together with such parts of said College avenue as are opposite and contiguous to the said premises, etc., and together with the right of way by, through, and upon the said several roads, streets, and avenues laid down on said map in common with the other owners, etc., and subject to the right of way of said other part owners in common by, through, and upon the said several roads, streets, and avenues, it being intended to keep open the said streets and avenues, etc., as public roads." Shortly after taking possession under his deed in 1850 Haskin proceeded to open College avenue, the easterly line of which, as opened by him, corresponded with the easterly line of the avenue as projected on the farm map. He opened it 50 feet in width, and has, at his own ex-

pense, so maintained it ever since, and the abutting owners and the public have used it as thus laid out. Had it been actually opened on the lines shown on the farm map, it would have been 66 feet wide, and would have included the strip of land in question. There never was any formal accept-ance by the town of West Farms, (within which the land was located prior to the annexation of part of Westchester county to the city of New York,) and there never was any other acceptance of the avenue by such town as a public street than such as may be implied from the use by the public. On laying out College avenue, Haskin, who owned the fee of the land on the westerly line of the avenue as he opened it, put up a building (in the year 1850) partly on a strip about 16 feet wide, which strip was included within the lines of College avenue as they were drawn on the farm map, and which by the terms of his deed was subject to whatever rights the public and the abut-ting owners had actually or prospectively in that part of College avenue as pro-jected on the farm map. He has been by himself and his tenants in posses-sion of the strip ever since; he paying taxes on it to the town of West Farms, while the property was within the limits of Westchester county, and to the city of New York since that time. The commissioners, in this proceed-ing, have awarded him nominal damages only for the strip of land and the house.

It is well settled in this state that where land dedicated or appropriated to the purposes of a public street on a map filed by the owner of property is taken by the public authorities, the grantee is entitled only to a nominal award, (*In re Public Parks*, 6 Hun, 486; *In re Lewis St.*, 2 Wend. 472; *In re Brooklyn*, 73 N. Y. 179;) and it has been held in this court in an unre-ported case (*In re One Hundred and Fifty-Sixth and Other Streets*, General Term, May, 1879,) that the owner of buildings situated on land for which a nominal award only can be made is not entitled to an award for such build-ings. That principle has been applied here by the commissioners, and, as I think, correctly. When Haskin built the house on the land owned by him in fee, College avenue was not actually opened or used, but he took the land on which he built subject to the easement and to the right of the public and of owners of adjoining lands in that very space upon which he built. There was a manifest intended dedication of the *locus in quo* by Powell as part of College avenue when he filed his farm map, an intention which was empha-sized and again proclaimed by the terms of Haskin's deed. That deed was taken by the grantee, subject to the acceptance by the public of the space in-dicated in the map as College avenue, a space 66 feet wide in front of Has-kin's lots; not to the acceptance of merely so much of that space as Haskin might determine to be sufficient for the purpose of an avenue. It is true that an acceptance by the public was necessary to make a completed dedica-tion, and that the town of West Farms never, by any formal act, accepted any part of College avenue; but the city of New York has made such acceptance, and has done so before any revocation, and it was not limited to any partic-ular time within which to accept. As against the public, the dedication was susceptible of revocation by the original proprietor before acceptance, but that was not a right which passed to Haskin. The terms of his deed commit him to the public right, and he had no control over the grant or dedication to revoke it. But, however that may be, there was, if not a completed dedi-cation to the public, a clear reservation of an easement or right of way in College avenue to the whole width thereof, as shown on the farm map of 1850, for the benefit of owners of other lots; and, as that easement lay in grant, it could not be extinguished by non-user only,—it could only be so ex-tinguished by non-user and adverse possession; and, if Haskin's holding of the *locus in quo* were adverse, he might claim to have destroyed the ease-ment as against adjoining proprietors of land. His is not adverse posses-sion, because he holds under a deed which expressly conveyed to him subject

to this very easement.  *Smyles* v. *Hastings*, 22, N. Y. 224;  *Bridges* v. *Wyck-off*, 67 N. Y. 133.  His fee came to him burdened with the right of the public or of the adjoining owners to the use of the whole width of College avenue as laid out on the farm map, and a nominal award only was proper.

*Third.*  The trustees of St. John's College also object to the report in that the commissioners have failed to award them substantial damages for a part of parcel No. 90 on the commissioners' damage map, it being the part marked "C" on the map, on the hearing of this motion.  The difficulty respecting this piece of property is to ascertain its ownership, and that is effected by the question as to its being within or without the lines of what was formerly known as the Kingsbridge road.  The college claims this piece of land as belonging to it, and that the plot is part of the Rose Hill farm, the title to all which has become vested in it.  The commissioners have determined that it was part of the Kingsbridge road, and does not, therefore, belong to the college, as it formed a portion of a public highway.  The loss of a map on which the lines of the Rose Hill farm were shown has necessitated a resort to testimony as to the extent and boundaries of the college property, and the proof was made before the commissioners by Mr. Findlay, a surveyor, who many years ago surveyed and mapped this farm, and by Mr. Vogel, who has recently undertaken to establish the lines of the farm by investigations and surveys made by him.  Affidavits were handed in at the submission of this motion, which contain facts that were not before the commissioners, and which I think should be presented to them.  If the true line of Kingsbridge road can be ascertained, and it is shown that the piece of land in question was not part of that highway, it would remain an open question in the present condition of the case whether it belonged to the college as part of the Rose Hill farm or to the college and the present owners of a portion of the Powell farm, for the evidence is that it was used in common as an entrance to both farms.  The report must be recommitted to the commissioners, to take further evidence on the claim of the college, and an opportunity will be thus afforded for the parties to examine more in detail the facts deposed to in the additional affidavits.  It would be advisable for the commissioners also to take the testimony of other persons acquainted with the condition and use of the land in question at the time of and prior to the acquisition by the college of the Rose Hill farm.  The report will be sent back to the commissioners for further proceedings in accordance with the views above expressed.