JOHN P. MANNING, administrator, &c., of Philander S. Pierson, deceased,

*v.*

WALTER P. LINDSLEY, executor of Mary E. Pierson, deceased.

[Filed September 29th, 1903.]

The remainder interest in money bequeathed to testator's wife for life, not otherwise disposed of, passes to her under a clause giving to her the residue and remainder of his estate.

On demurrer to bill.

*Mr. Joseph D. Gallagher,* for the demurrant.

*Mr. Malcolm MacLear,* for the complainant.

EMERY, V. C.

This bill, which involves the construction of a will, discloses the following material facts: Philander S. Pierson, by his will, directed (1) the payment of his debts, (2) bequeathed to his wife, Mary S. Pierson, his household furniture, horses, wagons and riding equipments, with a direction that no inventory or accounting of these should be made; (3) devised his homestead property, with certain other lands, to his wife for life, with remainder over to other persons. The fourth item, one of the items now in question, is as follows:

"*Fourth.* I give and bequeath to my wife aforesaid the sum of Fifteen Thousand Dollars during her natural life, with the privilege of selecting that amount from any securities held by me at my decease, at the par value of the same."

By the fifth item he bequeathed to Emma L. Harrison $5,000, and gave to her the second choice of selection from any securities held at his decease. Four other legacies, three of $1,000 each, and one of $2,000, are given by the sixth, seventh and eighth clauses, and by the ninth clause the wife was made residuary legatee, as follows:

"*Ninth.* The residue and remainder of my estate I give and bequeath to my wife aforesaid, but if at my decease there shall not be sufficient property, together with the proceeds of sale of any and all real estate not otherwise disposed of by this my last will, to pay all the foregoing bequests, then and in that case I order the bequests to my wife and Emma L. Harrison to be paid first and the residue and remainder to be divided *pro rata* according to the several bequests made."

Testator's wife was appointed sole executor of the will, with the power to sell real estate. She received the securities left by the testator, selected the $15,000 from them, retained these during her life and afterwards died, having made a will, of which the defendant is executor. By this will she disposed of

all her real and personal estate. The bill alleges that the defendant, as executor of Mary E. Pierson, has taken possession of the $15,000 in securities and now claims them as part of her estate for distribution under her will. After Mary E. Pierson's death, complainant was appointed substituted administrator of Philander S. Pierson, and files this bill for an account of this fund and payment of it to him as a part of the husband's estate. Complainant's claim is that the remainder interest in this fund of $15,000, after the bequest to testator's wife for life, did not pass to her under the residuary clause, and therefore, not being disposed of, testator died intestate as to this sum. This contention cannot be sustained.

The bequest of $15,000 to the wife for life left the sum undisposed of after her death. The *ninth* item disposed of "residue and remainder" of testator's estate, and these words, in their ordinary and natural import, include the interest on the $15,000, undisposed of by the fourth clause. Had this "residue and remainder" been given to any person other than the wife, no possible question could have been raised as to the residuary legatee being entitled to the sum after the wife's death. The mere fact that the residuary legatee is also the legatee for life is not of itself sufficient to restrict this ordinary operation of the words. Nor in the form of the bequest to the wife for life is there anything to exclude the operation of the residuary bequest. In *Clark's Executors* v. *Richards, 6 C. E. Gr. 361 (Errors and Appeals, 1869)*, it was held that a gift of the interest of a bond and mortgage and of the dividends of stock to testator's daughter, by bequests which were construed to be bequests for life, with a provision for using the principal for her support, if necessary, did not have the effect of restricting the operation of a general residuary clause, which divided the principal between the life tenant and another as residuary legatee. Both the life estate and residuary legacies were held to be operative. This is also the rule of construction applied where there is a devise for life of real estate, and a subsequent residuary devise in fee to the tenant for life, either alone or in connection with others, and in such case the mere fact that there is prior devise

to the tenant for life does not, by implication or construction, restrict the full operation of the residuary devise. *2 Jarm. Wills (R. & T. ed.) \*649; Williams* v. *Goodtitle, 10 Barn. & C. (21 E. C. L.) 895 (1830)*; *Ridout* v. *Pain, 3 Atk. 486, 493 (Lord Hardwicke, 1747).* A fortiori this must be the rule in bequests of personalty, and this is the conclusion reached in other courts in such bequests. *Read* v. *Payne, 3 Call 225; 2 Am. Dec. 550 (1802).* Even had the bequest for life been made in such terms as to show a clear intention that the tenant for life should not herself have the *corpus,* or have anything but the interest, then, as Chief-Justice Beasley points out in *Clark* v. *Richards, supra* (at *p. 363*), the residuary gift to the tenant for life must be held to take effect by giving to the life tenant the power to dispose of the *corpus* by will. That has been done in this case, and the defendant claims under the will of the tenant for life.

Complainant has no claim to this fund in question, and the demurrer must be sustained.