## Garrett's Estate.

Argued January 27, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Harry J. Gerber,* for appellant, (No. 461).

*Thomas B. K. Ringe,* for appellant, (No. 477).

*Harvey Gourley,* with him *Benjamin H. Ludlow,* for appellants, (Nos. 482 and 483).

*Cadmus Z. Gordon, Jr.,* for appellants, (Nos. 484, 485 and 486).

*Russell Wolfe,* for appellant, (No. 489).

*H. Alan Dawson,* of *Biddle, Paul, Dawson and Yocum,* for appellees (accountants and administrators c. t. a. of Estate of Henrietta E. Garrett).

*Wilhelm F. Knauer,* for appellees (heirs and next of kin of residuary legatee).

*John C. Bell, Jr., C. Leo Sutton,* of *Bell, Truscott, Henry and Sutton,* for appellees (heirs and next of kin of deceased residuary legatee).

*Alfred G. Muench,* with him *Pepper, Bodine, Stokes & Schoch,* for appellee (claimant of the estate of the deceased residuary legatee).

*Curtis Bok,* with him *Thomas J. Minnick, Jr., Joseph A. Marinelli, Robert M. Boyle,* Special Deputy Attorney General, and *Charles J. Margiotti,* Attorney General, for appellee (Commonwealth).

Opinion by Mr. Justice Schaffer, March 23, 1936:

The question for determination is whether Henrietta E. Garrett, widow of Walter Garrett, took an absolute estate in fee simple under his will, or a life estate with power to use the principal during her life and to dispose of it by power of appointment in her will. The orphans' court decided that the widow took an absolute estate in fee. A number of the heirs at law of Walter Garrett appeal.

The size of the estate left by Henrietta E. Garrett, $17,549,642.58, should not becloud the meaning clear to us, of the paragraph in Walter Garrett's will which is to be interpreted. It reads: "Thirteenth:—I give, devise and bequeath to my dear wife Henrietta E. Garrett, her heirs, executors, administrators and assigns all the rest, residue and remainder of my estate real and personal whatsoever and wheresoever situate for her own absolute use and disposal. And not having been blessed with any children, I desire that at my death she shall make a will disposing of all her property so that she may know to whom it will descend. If I should die within one calendar month after the execution of this Will, I trust that she will see that all of its provisions are fully carried out."

The first rule for the interpretation of wills should be the common sense one, that where the testator's intention is expressed in plain language, no technical rules of construction are necessary: *Boyer v. Campbell*, 312 Pa. 460, 462, and cases cited. That rule governs in this instance. That the expression "I give, devise and bequeath to my dear wife Henrietta E. Garrett, her heirs, executors, administrators and assigns" gave her an absolute estate is not controverted. It could not be. But it is argued that the words which follow "for her own absolute use and disposal" cut down the complete estate to one of a lifetime right to use income and principal and a power to appoint by will what should be left. A long line of our cases, of which *Tarter's Est.*, 291 Pa. 458,

462; *Crawford v. Withrow*, 314 Pa. 497, 499, 500; *Rapson's Est.*, 318 Pa. 587, 590, are examples, lay down the principle that where in a will an absolute estate is given it will not be cut down by subsequent language unless the intent so to do is clear. Certainly it cannot be said that any such intent is clear in the will before us. On the contrary, we think the language is confirmatory of the fee previously given. As bequeathed, it was "for her own absolute use" and for her own absolute "disposal." Her dominion over it was to be absolute, that is to say, unlimited.

If the words "heirs, executors, administrators and assigns" had been left out and the words had been "to my dear wife Henrietta E. Garrett for her own absolute use and disposal," we think there could be even then no other determination than that she took a fee. While it is earnestly argued that the words "for her own absolute use and disposal" import a power of appointment, the words are not apt for such a purpose and convey no such meaning to our minds. Nor are they such as would be used to create a life estate.

The further expression in the next sentence confirms the conclusion that the testator intended an absolute estate in his wife, "I desire that at my death she shall make a will disposing of all *her* property so that she may know to whom it will descend." This shows that he regarded the property after his death as hers. There was no gift over and it seems to us inconceivable that the testator, whose estate amounted to more than $6,000,000, could have intended to permit its ultimate disposition to remain in the air and that he did not regard its placement as fixed in his widow by his will. The absence of a gift over aids the construction, if aid were necessary, that an absolute estate was intended to be given: *Wills Act* of June 7, 1917, P. L. 403, section 12, 20 P. S., section 224; *Eberle v. Wood*, 304 Pa. 403, 407, and cases cited.

The letter from the testator to his wife, referring to the will, which letter the court refused to admit in evidence, was properly rejected: *Dembinski's Est.*, 316 Pa. 61; *Hughes's Est.*, 319 Pa. 326; *Mizener's Est.*, 262 Pa. 62. The will stood in no need of anything outside of it to aid in its interpretation. Moreover, as we read the letter, it does not help appellants but evidences that the testator thought he had conferred on his wife an absolute estate.

The decree is affirmed at appellants' cost.